UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | )  2:05-CR-80 |
| vs. | ) |
| | ) |
| JAMES WENDELL ROACH, JR. | ) |
| AND PATRICK JAMES | ) |
| SHELDON | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the "Joint Motion For A New Trial" filed by the defendants [Doc. 294][1]. The government has responded in opposition [Doc. 299] and the matter is ripe for disposition by the Court.[2] For the reasons which follow, the motion will be denied.

I. **Procedural background**

The defendants, Newport, Tennessee police officers, were indicted by the federal grand jury in a three (3) count indictment charging them with conspiracy to violate the civil rights of Wilder Gomez Roblero ("Gomez") and Marcos Mejia

---

[1] Also pending are two motions to consider additional affidavits and exhibits in support of the joint motion for new trial [Docs. 295, 296].

[2] The defendants have requested an evidentiary hearing "to further support the resulting in prejudice from the trial errors" set forth in their motion. This Court sees no need for an evidentiary hearing or for oral argument on this motion and defendants' request for an evidentiary hearing is DENIED.

Vasques ("Mejia"), a felony, and misdemeanor counts of violation of the civil rights of Gomez and Mejia. [Doc. 1] This case originally proceeded to trial from February 2, 2006 through February 9, 2006, which resulted in an acquittal of the defendants on the felony charge. The jury was unable to reach a verdict as to the two misdemeanor charges and a mistrial was declared.

After the conclusion of the first trial, a three count superseding indictment was returned by the grand jury charging the defendants in counts 1 and 2 with the same misdemeanor counts charged in counts 2 and 3 of the original indictment and charging, in Count 3, that the defendant, Patrick James Sheldon, "did receive, relieve, comfort and assist the offender, JAMES WENDELL ROACH, JR., in order to hinder and prevent the offenders' apprehension, trial and punishment, in violation, Title 18, U.S.C. § 3." (the comfort and assist" charge) [Doc. 64] The case proceeded to trial on the superseding indictment from April 5, 2006 through April 12, 2006 resulting in the acquittal of Roach and Sheldon as to Count 1 (violation of the civil rights of Gomez) and the acquittal of Sheldon of the misdemeanor charge of violating the civil rights of Mejia. Roach was found guilty as charged in Count 2 of the superseding indictment (violation of the civil rights of Mejia) and Sheldon was found guilty as to Count 3 of the indictment (the "comfort and assist" charge) *See* Verdict Form, Doc. 284.

II. **Motions for New Trial**

Fed. R. Crim. P. 33 provides that a court may grant a motion for new trial

if it is necessary in the "interest of justice." The decision to grant or deny such a motion rests within the discretion of the district court and will be reversed only upon a showing of abuse of discretion. *United States v. Seago*, 930 F. 2d 482, 488 (6th Cir. 1991). The defendant bears the burden of proving the need for a new trial. *Id.*

## III. <u>Allegations of Prosecutorial Misconduct – Closing Argument</u>

### A. *Legal Standard*

The defendants first contend that they are entitled to a new trial based on prosecutorial misconduct in regard to the prosecutor's closing argument. The Sixth Circuit has summarized the requisite analysis and legal framework for the evaluation of a claim of prosecutorial misconduct in *United States v. Abboud*, 438 F.3d 554, 583-584 (6th Cir. 2006):

> The claim of prosecutorial misconduct involves a two-step inquiry. First, the Court must determine if the government's statements were improper. *United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir.1996) (quoting *United States v. Carroll*, 26 F.3d 1380, 1384-90 (6th Cir.1994)). If the statements were improper, the Court must decide whether the statements were flagrant. Id. (quoting *Carroll*, 26 F.3d at 1385). The flagrancy inquiry requires examination of four factors:
>    (1) whether the remarks tended to mislead the jury or to prejudice the accused [including whether the trial judge gave an appropriate cautionary instruction to the jury];
>    (2) whether they were isolated or extensive;
>    (3) whether they were deliberately or accidentally placed before the jury; and
>    (4) the strength of the evidence against the accused.

3

> Id. (alteration in the original) (quoting *Carroll*, 26F.3d at 1385). If the statements were not flagrant, the Court will reverse only if " '(1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to the conduct, and (3) the district court failed to give a curative  instruction.' " Id. (quoting *United States v. Brown*, 66 F.3d 124, 127 (6th Cir.1995)).

### B. *Prosecutor's Argument Related to Cell Phone*

During the course of the trial on the superseding indictment, the defendants argued that the traffic stop of Gomez and Mejia never occurred and vigorously attacked the credibility of the victims. Through the testimony of Gomez, the government established that just prior to and contemporaneously with the traffic stop of the victims by the defendants, the victims engaged in conversations on a cell phone which had been loaned to Gomez by Sandra Boles, a co-worker at 411 Industries. Through Ms. Boles, the toll records for the cell phone were introduced into evidence by the government to corroborate the testimony of Gomez and to establish that the cell phone was in fact in use at times consistent with the government's time line of events related to the traffic stop.

The defendants challenged the credibility of Gomez' testimony related to the cell phone in several ways, including questions which suggested he had not testified truthfully about even having the cell phone. Defense counsel vigorously challenged Gomez through questions establishing that he had not told the TBI agent

4

who initially interviewed him about the cell phone, nor had he told Ms. Maria Delacruz, his friend who had first reported the traffic stop to the 911 dispatcher. In response to questions by the government attorney during redirect examination, Gomez testified that it was a man with a beard who first asked him about the cell phone during an interview and Gomez identified a person present in the courtroom, later identified on the record as Brian Hackett, an investigator for defense counsel as the person who interviewed him (in response to a question posed by Sheldon's attorney.)[3] Through additional questions from defense counsel, it was established that Assistant U.S. Attorney Smith later (after Gomez' interview by Hackett) "confronted" Gomez with the cell phone records and in fact showed him a copy of the records.

The defendants continued to make an issue of the cell phone and cell phone records during their closing argument. During argument by Roach's counsel, the following argument was made:

> . . . WHEN DID THEY START TALKING ABOUT CELL PHONES? WHAT DID THEY TELL YOU? ONLY AFTER TWO MONTHS AGO, AFTER THEY TESTIFIED, DID IT COME UP ABOUT CELL PHONES. THAT'S IMPORTANT. WHAT THEY ARE WANTING TO DO IS

---

[3] The transcript, at page 109, contains the following exchange:

> Q. Now you've pointed out Mr. Hackett there. That was probably around November when he found out that you had a cell phone. Isn't that correct?
>
> A. Yes. He got there, and he said, well, they were going to give me my money back, and I don't know what all else . . .

5

> TO FIX THE GOMEZ/VASQUES PROBLEMS, AND
> THAT IS THAT THEY DON'T EVEN KNOW WHEN AN
> ALLEGED STOP HAPPENED . . .

Tr., Doc. 297, p. 28

In rebuttal argument, the Assistant United States Attorney again addressed the issue of Gomez' possession and use of a cell phone during the time frame of the traffic stop, as follows:

> MS. PIERCE (Roach's Counsel) MAKES MUCH ABOUT
> CELL PHONE RECORDS AND WHEN IT WAS
> DISCOVERED; AND IT'S NOT DISPUTED THAT WHEN
> AGENT KING TALKED TO MR. GOMEZ AND MR.
> MEJIA, HE DIDN'T ASK, THINK TO ASK THEM
> ABOUT A CELL PHONE, THEY DIDN'T THINK TO
> TELL HIM; BUT WHAT IS TELLING IS MR. GOMEZ'S
> TESTIMONY. WHO WAS THE FIRST PERSON TO ASK
> YOU ABOUT THE CELL PHONE AND ASK YOU
> ABOUT THE CELL PHONE AND ASK YOU, DIDN'T
> YOU HAVE A CELL PHONE? IT WAS MR. HACKETT,
> THE INVESTIGATOR FOR SERGEANT ROACH; AND
> THAT'S IMPORTANT FOR ONE REASON, LADIES
> AND GENTLEMEN, THERE WERE FOUR PEOPLE ON
> THAT SATURDAY AFTERNOON THAT KNEW THERE
> WAS A CELL PHONE IN THAT VAN, WILDER GOMEZ,
> MARCOS MEJIA, JIMMY ROACH AND PAT SHELDON.
> THAT'S HOW THEY KNEW TOASK. MR. KING
> DIDN'T KNOW TO ASK BECAUSE HE WASN'T THERE
> AT THAT VAN THAT AFTERNOON, BUT THE
> DEFENSE KNEW TO ASK ABOUT THE CELL PHONE
> BECAUSE THEY KNEW THAT CELL PHONE WAS IN
> THE VAN.

Tr., Doc. 289, p. 20

Roach's counsel objected on the basis that such facts were not contained

6

in the record. The Court then cautioned the jury that they were the ultimate judges of the facts. "If the lawyers misstate the facts, that's up to you to decide." [Doc. 289 at p. 21]. Later, counsel for the defendants jointly moved for a mistrial on the basis of the government's alleged improper argument concerning the cell phone, adding a claim of a Fifth Amendment violation, citing *Griffin v. California*, 380 U.S. 609 (1965).

The defendants now allege that the government argument misstated the evidence and argued an inference that could not be reasonably drawn from the evidence. While the government may not include facts not in evidence in closing arguments, *U. S. v. Wiedyk*, 71 F. 3d 602, 610 (6th Cir. 1995), such does not constitute reversible error unless, considered in context, they affect the fairness of the trial. *Berger v. United States*, 295 U. S. 78, 55 S. Ct. 629 (1935); *United States v. Hickey*, 917 F. 2d 901, 904 (6th Cir. 1990). It is also appropriate to consider whether the defense argument invited the prosecutor's argument. *Hickey* at 905.

The statements by the government attorney during the closing argument were not a misstatement of facts in the record. Despite the fact that the defendants have offered a whole host of affidavits attempting to show that Gomez voluntarily disclosed to Hackett the existence of the cell phone rather than in response to a question from Hackett and that Hackett learned of the cell phone from Gomez and not Roach, that is irrelevant. The evidence in the record was simply that the first disclosure of the cell phone came because of a question asked by Hackett. Defendants

7

could have called Hackett as a witness to rebut Gomez' testimony but chose not to do so. Based upon the evidence <u>in the record</u>, the argument was not a misstatement and was certainly a reasonable inference based upon the evidence in the record, that is, that the defendants, because they were present at the scene of the traffic stop, would have known of the cell phone, leading to the reasonable and logical inference that the defense investigator had obtained this information from the defendant(s).

Secondly, the defense clearly invited the government's argument. From beginning to end, the defendants strenuously argued that they never made the traffic stop of Gomez and Mejia on the date alleged in the indictment and they vigorously and continually attacked the credibility of the victims. As defendants acknowledge, the natural import of the government's argument is that Roach and Sheldon had to have made the stop in order to inform Hackett of the existence of the cell phone, a clear response to the defense theory of the case. Likewise, it was the defense that made Gomez' credibility concerning the cell phone an issue in the case in the first place, thus making the testimony of Gomez that it was Hackett who first asked him about the cell phone relevant. The government's argument was a fair response to the defense arguments.

Even if the argument of the government was improper, it does not constitute prosecutorial misconduct justifying reversing a criminal conviction unless the misconduct was "so pronounced and persistent that it permeated the entire

8

atmosphere of the trial." *United States v. Mahar*, 801 F. 2d 1477, 1503 (6th Cir. 1986). The arguments at issue here can hardly be argued to have affected the fairness of the trial, especially in view of the acquittal of Roach and Sheldon as to count 1 and Sheldon's acquittal as to count 2 of the superseding indictment. The argument was but a few short sentences in a lengthy closing made after four days of trial. This Court sees no reasonable possibility that it contributed in any way to a conviction of Roach and Sheldon on the other counts.

      The defendants now also make the somewhat puzzling argument, without elaboration, that the government argument "is a step beyond making improper comments on a defendant's decision to remain silent, conduct which is prohibited by the Fifth Amendment," citing *Griffin*. In any event, there is no violation of the defendants' Fifth Amendment rights here. The Supreme Court in *Griffin* has decided that the Fifth Amendment protection against self incrimination "forbids either comment by the prosecution on the accused's silence or instruction by the court that such silence is evidence of guilt." *Griffin* at 615. However, subsequent cases have limited the broad reach of *Griffin*. *See U. S. v. Robinson*, 485 U.S. 25, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1998); *U. S. v. Hasting*, 461 U.S. 499, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983). The prosecution's statement in this case cannot reasonably be interpreted to have even been an indirect reference to the decision of these defendants to invoke their Fifth Amendment right to remain silent and refuse to testify at trial. This

9

argument of the defendants is totally without merit. Not only that, the jury was clearly and unequivocally instructed that it could not consider defendants' failure to testify and could not even discuss it in their deliberations.[4]

### C. *Prosecutor's Argument Related to Religious and Ethnic Prejudice*

The defendants' second allegation of misconduct in the prosecution's closing argument involves a reference to the Ten Commandments:

> MS. PIERCE ASKED, WELL, YOU DON'T EVEN KNOW WHO MR. MEJIA AND MR. GOMEZ ARE; AND THAT'S WHAT THEY WANT TO MAKE THE CASE ABOUT. I THINK BACK TO THE COMMANDMENT, THOU SHALT NOT STEAL. IT DOES NOT SAY, THOU SHALT NOT STEAL FROM PEOPLE YOU KNOW, THOU SHALT NOT STEAL FROM CITIZENS, THOU SHALT NOT STEAL FROM WHITE PEOPLE - - . . .
>
> THE LAW DOES NOT MAKE DIFFERENCES BASED ON WHO THE VICTIM IS. OUR CONSTITUTIONAL

---

[4] The Court specifically charged the jury as follows:

Instead, each defendant starts the trial with a clean slate, with no evidence at all against him, and the law presumes that he is innocent. This presumption of innocence stays with each of them unless the government presents evidence here in court that overcomes the presumption, and convinces you beyond a reasonable doubt that each of them is guilty.

This means that a defendant has no obligation to present any evidence at all, or to prove to you in any way that he is innocent. It is up to the government to prove that he is guilty, and this burden stays on the government from start to finish. You must find the defendants not guilty unless the government convinces you beyond a reasonable doubt that they are guilty.

and as follows:

A defendant has an absolute right not to testify. The fact that a defendant did not testify cannot be considered by you in any way. Do not even discuss it in your deliberations. Remember that it is up to the government to prove the defendants guilty beyond a reasonable doubt. It is not up to a defendant to prove that he is innocent.

RIGHTS DO NOT DEPEND ON WHO THE VICTIM IS.
THOSE RIGHTS APPLY TO EVERYONE IN THE
UNITED STATES.
Tr., Doc. 289, pp. 24-25

Although the defense attempts to characterize this argument as an appeal to religious and ethnic prejudice, the defense invited this argument when the defense made their own closing arguments . *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir.1993). Counsel for Roach initially argued:

> THIS IS ONE MARK IN TEN YEARS THAT THEY'RE
> SAYING ON A SERGEANT; AND THE WHOLE TALE
> DOESN'T MAKE ANY SENSE. WE CAN'T FURNISH
> ALL THE ANSWERS. WE DON'T KNOW WHY THE
> HISPANICS – THEY KNOW HOW TO WORK THE
> SYSTEM. THEY HAD THINGS TO HIDE. WE DON'T
> KNOW WHY THIS IS SET UP LIKE IT IS. IT'S ONE OF
> THE GREAT MYSTERIES; BUT WE KNOW THAT THE
> GOVERNMENT'S FACTS DON'T WORK, YOU CAN
> TELL FROM THEIR EVIDENCE AND THEIR
> WITNESSES.
> Tr., Doc. 297, p. 21

In the second portion of Roach's argument, co-counsel also argued:

> WHAT DID WE LEARN ABOUT THE INDIVIDUALS
> MARCOS MEJIA VASQUES, WILDER GOMEZ
> ROBLERO? ONE OF MANY QUESTIONS YOU WILL
> CONTINUE TO ASK YOURSELF WHENEVER YOU GO
> BACK TO DELIBERATE. WHO ARE YOU? THAT WAS
> A QUESTION THAT WAS ASKED BY MR. SMITH. DID
> YOU HEAR MR. GOMEZ? AT FIRST HE – THERE
> WAS A BIG LONG PAUSE, AND HE DID NOT WANT
> TO SAY WHO HE WAS. HE WAS ALSO ASKED HIS
> DATE OF BIRTH, AND HE KEPT ASKING, WELL

11

> WHICH ONE. HE WAS ASKED WHERE DID HE LIVE IN NEW JERSEY. I DON'T REMEMBER. FOR AN INDIVIDUAL WHO HAS COME TO THIS COUNTRY TO MAKE A BETTER LIFE, HE CANNOT REMEMBER THE FIRST PLACE HE CAME TO LIVE, THIS GREAT WONDERFUL COUNTRY THAT WE LIVE IN. WHY DID HE NOT WANT THE GOVERNMENT TO KNOW, US TO KNOW, YOU TO KNOW WHERE HE LIVED IN NEW JERSEY? IS THERE MORE BAD THINGS THAT HE'S DONE OUT THERE? THAT'S A QUESTION YOU GET TO ASK, AND YOU PROBABLY ARE NOT GOING TO GET THE ANSWER . . .
> Tr., Doc., 297, pp. 23-24

The Court FINDS that the prosecutor's remark about the Ten Commandments cannot be said to have misled the jury, there is no indication that the remark was anything but an isolated remark on the part of the prosecution, and this remark cannot be considered flagrant. The argument was an otherwise correct statement of the law and a fair response to defense counsel's tactics during the trial[5]. The Court finds that there is no reversible error as a result of this isolated comment which cannot be said to appeal to religious and ethnic prejudice because it was made to counteract the prejudice which the defense sought to create.

---

[5] This Court finds the accusation that the government appealed to ethic and religious prejudice somewhat hypocritical in view of the tactics pursued by defendants throughout their defense of these charges. Defense counsel employed tactics and statements, especially in the first trial, that can only be described as "race baiting", leading this Court to admonish defense counsel prior to the second trial that such overt racial tactics would not be tolerated during the second trial. Although not as pronounced during the second trial, counsel's reference to ". . . the Hispanics – they know how to work the system. They had things to hide . . ." falls in the same category.

### D. *Knowing Presentation of False, Misleading and Perjured Testimony*

The defendants also allege government misconduct through the use of false, misleading and perjured testimony at trial. To establish that the government suborned perjury, the defendants must show: "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998). The suspect testimony must actually be perjured, rather than contain "mere inconsistencies." *Id*. None of the defendants' conclusory allegations of perjury satisfy this test. The statements were, at most, mere inconsistencies, and even if the defendants could prove that the statements were false and material, they cannot establish that the prosecution knew that the witnesses would testify falsely.[6]

### IV. The *Allen* Charge

At 2:45 p.m. on April 10, 2006, the jury retired to deliberate. At 5:25 p.m., the jury sent a communication to the Court which asked:

> What if we are unable to reach a verdict?
> We don't believe we will be able to reach a verdict tomorrow, either.
> What should be do?
> Too much of the evidence is subjective, & minds are fairly well settled.

---

[6] The defendant also alleges various acts of misconduct on the part of the prosecutor in this case. (See Doc. 299, pp. 12-14). None of these other allegations, even if true, require a new trial or other remedy in this case.

13

Without further instructions, because the jury had deliberated for less than three (3) hours, the Court dismissed the jury at 5:50 and asked them to return at 9:00 a.m. on April 11, 2006, to continue their deliberations.

On April 11, 2006, the jury deliberated from 9:00 a.m. until 12:00 p.m., and after lunch resumed deliberations at 1:15 p.m. At 2:30 p.m., the jury sent a second communication to the Court which stated:

> We have reached a decision on questions #1, #2, & #4.
> We are undecided on questions #3 & #5.
> We have examined the evidence extensively & honestly seem
> to be at an impasse.
> What should be done?

At this point, the Court gave the jury the Sixth Circuit pattern *Allen* charge.[7] The Court adjourned at 5:30 p.m. on April 11, 2006, and the jury was told to return to deliberate at 9:00 a.m. on April 12, 2006.

After resuming deliberations at 9:00 a.m. on April 12, 2006, the jury returned a verdict at 10:35 a.m. Although the defendants contend that the Court's *Allen* charges were improper, the defense only offers support by a visual proffer in regard to two members of the jury, one of which was tearful each time the jury returned to the courtroom with a question, and the other who appeared upset before

---

[7] Although defendants initially agreed that the Court should give the *Allen* charge, they changed their minds while the Court was preparing the charge and instead requested that the Court take the partial verdict and declare a mistrial on the other charges. Given the equivocal nature of the jury's communication, the Court declined to declare a mistrial.

14

and after the giving of the *Allen* charge.[8]

The Sixth Circuit has specifically held that the use of the Sixth Circuit Pattern Instruction for deadlocked juries, in lieu of another version of an *Allen* charge, while not mandated, is strongly preferred, and its use will, in most instances, insulate a resulting verdict from appellate challenge. *United States v. Clinton*, 338 F.3d 483, 487 (6th Cir. 2003). In this case, the defendants have failed to allege or to show that the Court's use of the Sixth Circuit pattern instruction was improper or coercive. Therefore, the Court's use of the Allen charge does not warrant a new trial.

For the foregoing reasons, defendants' motion seeking this Court's consideration of certain exhibits and affidavits in support of their motion for new trail are **GRANTED** [Docs. 295, 296]. Defendant's "Joint Motion For A New Trial" is **DENIED**. [Doc. 294].

SO ORDERED.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

---

[8] While this Court did not observe the reactions described in the defense proffer, such reactions do not establish that these jurors had been coerced in any way by the Court's charge. Jurors are often emotional during trial and when their verdict is returned. Such emotions simply reflect the enormity of their responsibility and that jurors take their duties very seriously. In addition, these jurors were polled by the Court and each juror indicated that the verdict represented the verdict of each individual juror.

15

Case 2:05-cr-00080-JRG   Document 312   Filed 08/10/06   Page 15 of 15   PageID #: 30